JOHN LYNDON PERRY, SR.,

    Plaintiff,

    v.         Case No. 19-C-410

TOM BURLING, et al.,

    Defendants.

## DECISION AND ORDER

Plaintiff John Lyndon Perry, Sr., who is currently serving a state prison sentence at Redgranite Correctional Institution (RCI) and representing himself, filed this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. In particular, Perry claims Tom Burling, Debra Bellin, and Angela Thompson were deliberately indifferent to his medical needs by ignoring his complaints and requests for a CPAP machine to treat his sleep apnea. He also asserted claims under Wisconsin law. The court has jurisdiction over Perry's § 1983 claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This matter comes before the court on the defendants' motion for summary judgment. The defendants assert that Perry has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) and has failed to establish that the defendants violated the Eighth Amendment. For the following reasons, the motion will be granted and the case will be dismissed.

## PRELIMINARY MATTERS

Before turning to the substance of the parties' arguments, the court must address the defendants' assertion that their proposed findings of fact must be deemed admitted as uncontroverted for the purposes of summary judgment because Perry failed to properly respond

to them in accordance with Civil Local Rule 56. Pursuant to the local rules, along with the motion for summary judgment, the moving party is required to file either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material issue and that entitle it to judgment as a matter of law. Civil L.R. 56(b)(1). The statement of proposed findings of fact is comprised of numbered paragraphs containing short factual statements and specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L.R. 56(b)(1)(C). The defendants in this case submitted proposed findings of fact in support of their motion for summary judgment in compliance with the local rules. Dkt. No. 29.

The party opposing the motion must file a response to the moving party's statement of undisputed facts which is intended to make clear which, if any, of those facts are in dispute, and to set forth any additional facts that bear on the motion. The opposing party's response must reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph. Civil L.R. 56(b)(2)(B). If the fact is disputed, the party must include a specific reference to an affidavit, declaration, or other part of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. *Id.* If the opposing party believes there are additional facts that prevent the entry of summary judgment, he should include a statement, consisting of short numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support the assertion. Civil L.R. 56(b)(2)(B)(ii). The defendants, as required by this court's local rules, included a copy of Federal Rule of Civil Procedure 56, Civil Local Rule 7, and Civil Local Rule 56 in their motion for summary judgment. Perry submitted a document disputing the defendants' proposed findings of fact but did not explicitly cite to evidence supporting his contentions, in violation of the local rules.

The Seventh Circuit has made clear that a "district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). In this case, Perry received proper notice detailing how to respond to the defendants' proposed findings of fact in compliance with this court's local rules. As a result, the court will deem the defendants' proposed findings of fact admitted for the purposes of summary judgment, as no proper response has been provided. *See* Civil L.R. 56(b)(4) (E.D. Wis.); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("We have . . . repeatedly upheld the strict enforcement of [local] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts."); *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with [the local rules], the court chooses to ignore and not consider the additional facts that a litigant has proposed."). With these considerations in mind, the court turns to the instant motion.

## BACKGROUND

Before being housed at RCI, Perry was housed at Dodge Correctional Institution (DCI) until December 5, 2018. Burling is a registered nurse and has worked at DCI since August 2001. Thompson is currently employed as the Health Services Manager at RCI. Bellin a registered nurse and has worked at RCI since June 2014.

Perry was transferred from the Milwaukee County Jail to DCI on October 17, 2018. Burling was not involved in Perry's initial health assessment and never saw or treated Perry while he was at DCI. Although the Health Transfer Summary from the Milwaukee County Jail did not mention a sleep apnea diagnosis, Perry self-reported this diagnosis to Nurse Shaune Hoban. On

3

October 24, 2018, Perry submitted a Health Service Request (HSR) inquiring when he would receive his sleep apnea machine. The on-duty nurse noted that she did not have any records indicating that Perry needed a CPAP machine and responded to the HSR by asking when and where Perry's last sleep study was. Nurse Kay Walsh saw Perry on October 29, 2018. Nurse Walsh noted that Perry reported he had a personal CPAP machine at home, but it was lost, and he had not used a machine since June 2018. He reported that he underwent a sleep study at St. Mary's Hospital in Milwaukee in 2005 or 2008. Nurse Walsh noted that she would fax a request for information to St. Mary's Hospital that day.

On November 17, 2018, Perry wrote an HSR asking when he would receive his CPAP machine. The HSR was triaged by the HSU nurse on call and was referred to Burling for response on November 19, 2018. Perry's HSR was placed in Burling's mailbox for non-urgent concerns. Burling does not check this mailbox on a daily basis and does not know why this HSR did not go to the assigned CPAP nurse for her input. Burling was on vacation from November 21, 2018, to November 25, 2018. Burling later reviewed the HSR on November 28, 2018, and noted that the issue was addressed at Perry's appointment with Dr. Scott Hofteizer on November 23, 2018.

At the November 23, 2018 appointment, Dr. Hofteizer indicated that Perry reported a history of sleep apnea. As part of his plan of care, Dr. Hofteizer noted that staff were attempting to obtain Perry's old records and, if they could not be obtained, Perry would need a polysomnogram at his next institution. Dr. Hofteizer wrote a request for protected health information to Columbia St. Mary's Hospital in Milwaukee on November 23, 2018. On November 30, 2018, the St. Mary's record department sent a response indicating that no patient with the name and date of birth provided was found in the database. Perry transferred to RCI on December 5, 2018.

On December 21, 2018, Perry wrote an HSR reporting that he was diagnosed with sleep apnea outside the institution and complained of issues with breathing, blood pressure, and headaches as a result of not having his CPAP machine. Bellin reviewed Perry's orders and the health and physical history report completed by Dr. Hoftiezer. In the report, Dr. Hoftiezer indicated that Perry had not used a CPAP machine in over six months and that Perry would need to do a polysomnogram, or sleep study, to determine if it was still necessary for him to have a CPAP machine. Bellin could not provide Perry with a CPAP machine because his request did not appear to be a medical emergency requiring immediate attention. Instead, Bellin scheduled Perry for the next available appointment with Respiratory Nurse Barter to start the sleep study/CPAP process and responded to the HSR on December 22, 2018, noting that Perry was scheduled to be seen in HSU by an RN/LPN. This was Bellin's only interaction with Perry regarding his requests for a CPAP machine until March 28, 2019, when Perry refused to complete a sleep study.

On December 27, 2018, Perry was seen by Katherine Thompson, who noted that Perry requested a CPAP machine. She started the process for a sleep study evaluation tool and forwarded it to the provider. She noted that Perry had a follow-up with a doctor scheduled for January 11, 2019. On January 6, 2019, Perry sent an interview/information request to the HSU complaining about not being able to get air while sleeping. On January 7, 2018, a nurse responded to the request by scheduling an RN appointment. Perry was seen by Nurse Cindy Barter on January 8, 2019. Barter noted that staff had been unable to locate records of a sleep study from St. Mary's in Milwaukee and informed Perry that he would need to discuss this with his Advanced Care Provider (ACP) at his next appointment. Barter indicated at the appointment that, because no prior records had been found, an evaluation tool would need to be completed before submitting a request to the Wisconsin Sleep Lab. Perry was scheduled to see an ACP that month, so an order and evaluation tool could be completed at that time.

5

On January 9, 2019, Perry wrote an HSR addressed to Health Services Manager Angela Thompson requesting a follow-up regarding his sleep apnea and receiving his CPAP machine. Thompson does not recall seeing this HSR. Katherine Thompson responded to the HSR, stating that Perry was told to address his concerns at the provider appointment, tentatively scheduled for January 16, 2019. Nurse Practitioner Darlene Wilkey saw Perry on January 16, 2019. At this appointment, Perry reported, among other things, that he had a history of sleep apnea and had not been sleeping well. Wilkey noted that Perry was alert and oriented and in no acute distress. She also noted that diagnosis was deferred. The next day, Wilkey completed a sleep study requisition form to request a sleep study for Perry.

On February 1, 2019, Perry wrote an HSR complaining about not receiving his CPAP machine. Cindy Barter responded that Perry had an appointment that day with a nurse practitioner. Perry was seen later that day by Wilkey, who completed the sleep study evaluation tool with Perry. The sleep study evaluation tool is used to help medical providers determine if a sleep study is appropriate, based on the patient's self-reported symptoms. Perry reported, among other things, snoring, sleep fragmentation, memory loss, decreased concentration, irritability, morning headaches, non-refreshing sleep, and excessive sleepiness. He also scored an 18 on the Epworth Sleepiness Scale, which has a maximum score of 24. Although Wilkey tallied Perry's score to be a 21, the individual lines correctly add up to 18.

On February 11, 2019, Dr. Kira Labby completed a sleep study requisition form for a sleep study to be completed with Perry. On February 15, 2019, Dr. Labby ordered that Perry should be scheduled for the sleep study. Perry wrote an HSR on February 19, 2019, complaining about not receiving a CPAP machine. Katherine Thompson replied, "Please be patient—you will be scheduled for a sleep study." Perry was not able to be immediately scheduled for a sleep study

6

because RCI must schedule the use of equipment sets from the UW Sleep Lab and have the equipment mailed to the institution.

On March 21, 2019, Perry refused to complete the sleep study, citing that his anxiety was high, he was scared he might die, he felt there was prejudice, and he was scared of Europeans. On March 28, 2019, Perry refused to complete the sleep study again, citing that his anxiety was high, he was scared to take the sleep study in HSU, and he has trust issues. In response to Perry's two refusals, Nurse Shari Klenke spoke with Perry on March 28, 2019. They discussed at length the importance of doing a sleep study due to his complaints. Perry continued to refuse to do the sleep study and mentioned that he had a CPAP machine outside of prison. Another release was sent to Columbia St. Mary's, which yielded a report of Perry's sleep study from 2010. Perry's ACP determined that this study was too old to use, and that Perry should attempt to do the sleep study, as he would likely need different settings on the machine after nine years.

On May 13, 2019, Perry met with Donna Dipuis, a respiratory therapist, to attempt to discuss the in-house sleep study. Perry again reported that he does not trust the technology. Dipuis explained that the sleep study would gather information that the UW Sleep Lab and trained respiratory therapists would review it. Then doctors would make recommendations based on those results. Dipuis even offered to help instruct Perry on the set up of the sleep study, but Perry reported that he will wait. Perry was told that if he wished to set up a sleep study, he could contact HSU at any time to set up the appointment.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that there are no facts to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable

inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "Material" means that the factual dispute must be outcome-determinative under the law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the nonmoving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The moving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

## ANALYSIS

**A. Failure to Exhaust Administrative Remedies**

As an initial matter, the defendants assert that this case should be dismissed because Perry failed to exhaust his administrative remedies. The PLRA provides that a prisoner cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that a prisoner comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A plaintiff's failure to properly exhaust each step of the process constitutes a failure to exhaust available administrative remedies. *Id.* The exhaustion requirement "applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 526, 532 (2002). The purpose of § 1997e(a) is to "permit the prison's administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Wisconsin has implemented the Inmate Complaint Review System (ICRS) under which inmate grievances concerning prison conditions or the actions of prison officials are "expeditiously raised, investigated, and decided." Wis. Admin. Code § DOC 310.01. Under the ICRS, an inmate must file a complaint with the institutional complaint examiner (ICE) within 14 calendar days after the events giving rise to the complaint occur, unless good cause exists to excuse a delay. *Id.* § DOC 310.07(2). The ICE has the authority to return, investigate, or reject the complaint. *Id.* § DOC 310.10. The inmate may appeal the rejection of the complaint to the appropriate reviewing authority within 10 calendar days. *Id.* § DOC 310.10(10). The reviewing authority shall make a decision within 15 days following receipt of the recommendation or appeal of a rejected complaint. *Id.* § DOC 310.11(1). The reviewing authority's decision is final. An inmate may appeal the reviewing authority's decision within 14 days after the date of the decision by filing a typed or legibly printed request for review with the corrections complaint examiner (CCE). *Id.* § DOC 310.12(1). After receiving an appeal, the CCE recommends a decision to the Department of Corrections (DOC) Secretary, who adopts or rejects the recommendation. *Id.* §§ DOC 310.12; DOC 310.13. The failure to properly exhaust each step of the grievance process before filing a lawsuit constitutes a failure to exhaust administrative remedies. *Pozo*, 286 F.3d at 1025.

The defendants assert that Perry failed to exhaust his available administrative remedies because he did not pursue each step within the administrative process before filing his lawsuit.

9

On January 10, 2019, Perry filed inmate complaint RGCI-2019-1520 claiming that the HSU refused to provide him with a CPAP machine to treat his sleep apnea. On February 19, 2019, the ICE recommended that Perry's complaint be dismissed because Perry was currently progressing through the evaluation steps to determine if he has obstructive sleep apnea. On March 11, 2019, the reviewing authority dismissed Perry's complaint on the grounds that Perry was being evaluated for sleep apnea and equipment would be provided as need determined. On March 15, 2019, Perry appealed the dismissal of his inmate complaint to the CCE. He then filed this lawsuit on March 20, 2019. On March 26, 2019, the CCE recommended that Perry's appeal be dismissed because Perry was being evaluated and had an ongoing plan for follow-up and Perry had presented no further evidence to support a recommendation to overturn the previous decision. On April 7, 2019, Cindy O'Donnell of the Office of the Secretary dismissed Perry's appeal based on the CCE's recommendation. The defendants assert that Perry's claims must be dismissed for failing to exhaust because Perry completed the exhaustion process after he filed the civil complaint in this case. There is no dispute that Perry failed to completely exhaust the administrative process before filing his lawsuit.

Notwithstanding Perry's failure to exhaust his administrative remedies before filing the instant action, the court may set aside the issue of pre-suit exhaustion and consider the merits under certain circumstances. *See Fluker v. Cty. of Kankakee*, 741 F.3d 787, 792–93 (7th Cir. 2013) (although a district court must consider exhaustion before reaching the merits, "nothing . . . prohibits a district court's progression from the PLRA defense to the merits if the situation properly calls for it"). The Seventh Circuit has recognized that, if discovery is closed, a defendant's motion for summary judgment is fully briefed on the merits, and the plaintiff has been afforded a full and fair opportunity to respond, considerations of judicial economy and finality may militate in favor of reaching the merits in the alternative despite the failure to exhaust. *Id.*

In this case, it makes "perfect sense" to address the merits of this case. *Id.* at 793. The court now turns to the merits.

**B. Perry's Deliberate Indifference Claims**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. To prove a claim of deliberate indifference, the plaintiff must "establish that he suffered from 'an objectively serious medical condition' and that the 'defendant was deliberately indifferent to that condition.'" *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)).

The defendants assert that Perry has not shown that they were deliberately indifferent to an objectively serious medical condition. Deliberate indifference requires more than negligence or even gross negligence; it requires that the defendant knew of, yet disregarded, an excessive risk to the plaintiff's safety. *Farmer*, 511 U.S. at 825, 837; *see also Estelle*, 429 U.S. at 104. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "[D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996).

11

In this case, Perry has not established that the defendants were deliberately indifferent to his medical needs. At DCI, Nurse Burling received a single HSR submitted by Perry. When Nurse Burling reviewed the request after his return from vacation, he noted that Perry had been seen by a medical doctor relating to his sleep apnea and breathing concerns. At RCI, Bellin triaged Perry's December 2018 HSR, determined his request for a CPAP machine was not emergent because Perry had not used a CPAP machine for over six months, and scheduled him for an appointment with a nurse. Thompson, RCI's HSU manager, does not evaluate, diagnose, determine a course of treatment, prescribe medications, or provide direct care to inmates. She never received an HSR from Perry. The record therefore does not support a finding that the defendants were deliberately indifferent to Perry's medical needs.

Instead, the record shows that the HSU staff went to great efforts to treat Perry's sleep apnea complaints. Beginning in October 2018 and continuing into the Spring of 2019, medical staff promptly responded to Perry's medical requests and provided ongoing treatment regarding his sleep apnea and breathing concerns. Efforts to treat Perry's sleep apnea were frustrated by Perry's refusal to consent to the sleep test ordered by a medical doctor as necessary to properly assess Perry's need for a CPAP machine. As a result, any complaints of delay Perry may assert are undermined by the fact that he refused to undergo the sleep study. In addition, Perry has not presented any medical evidence that any delay detrimentally affected, unnecessarily prolonged, or exacerbated his symptoms and caused harm. *See Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." (citing cases)). He has not provided "medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Id.* In short, medical staff, including the defendants, were not deliberately

12

indifferent to a risk of serious injury. For these reasons, the defendants' motion for summary judgment will be granted as to Perry's federal claims.

**C. Perry's State Law Negligence Claims**

Perry has also asserted state law negligence claims. Generally, when federal claims drop out of a case, federal courts decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3); *see Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Seventh Circuit has described a "sensible presumption that if the federal claims drop out *before trial*, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Nothing in this case suggests that the presumption should be ignored. Accordingly, Perry's state law claims will be dismissed without prejudice so that they may be pursued in a state forum.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment (Dkt. No. 27) is **GRANTED** as to the federal claims, and such claims are dismissed. Perry's state law claims are dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of January, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court